IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RESHAN SAVAGE BEY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 25-CV-2081** |
| | : | |
| **WARDEN ERICKA PATTERSON,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                           AUGUST 4, 2025

Reshan Savage Bey, a prisoner at the Philadelphia Industrial Correctional Center ("PICC"), filed this civil rights action against PICC Warden Ericka Patterson, Lieutenant S. Sam, and Correctional Officer D. Johnson.[1] Each defendant is named in his or her individual as well as official capacities. Bey also seeks leave to proceed *in forma pauperis*, which the Court will grant. For the reasons set forth, the Complaint will be dismissed.

**I.     FACTUAL ALLEGATIONS**[2]

Bey alleges that, after an incident with his cell mate that occurred on January 30, 2025, he was taken from PICC to Jefferson Torresdale Hospital for medical treatment for a dislocated jaw

---

[1] Public records, which the Court may consult when conducting a screening, *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006), indicate that Bey was a pretrial detainee at the time of the events described in his Amended Complaint. He was subsequently convicted of the charges for which he was detained on June 6, 2025. *See Commonwealth v. Savage*, CP-51-CR-0004246-2024 (C.P. Philadelphia).

[2] The factual allegations are taken from Bey's Amended Complaint (ECF No. 4), which is the operative pleading. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019)*, cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted). Here, it consists of the Court's form complaint available to prisoners as well as additional typed pages. The Court deems the entire submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.

and then went to the medical unit at the Philadelphia Detention Center after he was discharged the next day. (Am. Compl. at 4-5.) He returned to PICC on March 21, 2025, but found his legal and personal property were missing. (*Id*.) His property had been packed up by F-2 Unit workers and Defendant Johnson. Johnson then gave the property to an unknown employee and it went missing. (*Id*. at 5, 16.) Warden Patterson allegedly failed to investigate the property loss after Bey wrote to her. (*Id*. at 12, 19-22.) Bey alleges that Patterson violated his First, and Fifth Amendment rights by failing to respond to his grievance and investigate the loss, including reviewing available surveillance videos. (*Id*. at 13;, 25 (grievance addressed to Patterson).) She also allegedly violated his Eighth Amendment rights by placing him in the Restricted Housing Unit ("RHU") at PICC from March 21 to April 21, 2025, after the incident with the cellmate, as well as when she transferred him back to PICC where the incident happened. (*Id*. at 13.)

Defendant Sam came to Bey's cell while he was in the RHU on March 30, 2025 and told him that she would have his former cellmate's cell searched to see if he had Bey's property. (*Id*. at 14.) On April 8, 225, she told him that his property could not be found within the facility. (*Id*. at 4, 14.) He filled out a form that Sam provided but no investigation was conducted. (*Id*. at 14.) He further alleges that Sam never searched the former cellmate's cell, failed to preserve surveillance camera evidence, and negligently did not act on the form Bey completed.[3] (*Id*. at 15.)

---

[3] Bey's reference to negligence does not state a constitutional claim. The United States Supreme Court has held that § 1983 claims may not be predicated on a state actor's mere negligence. *See Canton v. Harris,* 489 U.S. 378, 387 (1989) (holding that mere negligence in training cannot form basis of § 1983 liability); *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"). His passing reference to the term also fails to raise any state law claim.

Bey appears to allege also that Sam violated his rights by placing him back into the population at PICC where his jaw had been broken.[4] (*Id*.)

Defendant Johnson filed a misconduct report asserting that Bey was involved in a physical altercation with his cellmate, even though Bey and the cellmate did not "indicate nor gave a statement to [] Johnson that there was a physical altercation between them." (*Id*. at 16.) Bey claims his rights were violated because Johnson falsely reported there was a physical altercation but asserts also that he was "obviously . . . discretely attacked and/or fainted," resulting in his broken jaw. (*Id*. at 17.) He also claims that Johnson did not respond for about one hour to other inmates calling out to get help for Bey. (*Id*.) Bey claims he had to be assisted when he was removed from the cell because he was incoherent and partially unconscious. (*Id*. at 16.) Bey seeks money damages on his constitutional claim.[5] (*Id*. at 5.)

## II.   STANDARD OF REVIEW

The Court grants Bey leave to proceed *in forma pauperis*.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the court to dismiss a complaint if it fails to state a claim. Whether a

---

[4]   Bey avers in passing that the cells at PICC "are a safety hazard [as] there is no panic button or intercom." (Am. Compl. at 15.) It is unclear whether Bey intended to allege a claim based on this allegation or provided it merely as context for his other claims. If it is a separate claim, it is undeveloped and not plausible since Bey does not allege he was harmed by this condition or that any named Defendant was personally involved in that harm. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.).

[5]   In addition to constitutional provisions, Bey cites 18 U.S.C. §§ 241 and 3921. (Am. Compl. at 3.) There is no section 3921 in Title 18 of the United States Code. Section 241 is the criminal statute establishing criminal liability for certain deprivations of civil rights. *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001); *Figueroa v. Clark*, 810 F. Supp. 613, 615 (E.D. Pa. 1992). An individual cannot bring criminal charges through a private lawsuit, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and § 241 does not give rise to a civil cause of action. *See United States v. Philadelphia*, 644 F.2d 187 (3d Cir. 1980) (declining to create civil remedy under 18 U.S.C. §§ 241 and 242); *U.S. ex rel. Savage v. Arnold*, 403 F. Supp. 172 (E.D. Pa. 1975). Accordingly, any claim under these sections is dismissed with prejudice.

[6]   Because Bey is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Bey is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 8 F. 4th at 185 (quoting *Mala*, 704 F. 3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 8 F. 4th at 185 (quoting *Mala*, 704 F. 3d at 245).

**III.     DISCUSSION**

Bey asserts constitutional claims against the Defendants. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

4

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Lost Personal Property

Bey asserts constitutional claims based on the loss of his personal property.[7] Unauthorized intentional deprivations of property "[do] not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A correctional facility's grievance procedure provides an adequate post-deprivation remedy for intentional deprivations of property by correctional employees. *Tillman v. Lebanon Cnty. Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy). Accordingly, Bey's due process claim is not plausible because he had an adequate remedy for the deprivation of his property through the prison grievance system, even if the outcome was unsuccessful. *See, e.g.*, *Mbewe v. Delbalso*, No. 23-2054, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (*per curiam*) (affirming dismissal of due process claim because the "prison grievance procedure provides an adequate post-deprivation remedy, and the existence of this post-deprivation remedy forecloses [plaintiff's] due process deprivation of property claim" (citation omitted)); *Ransome v. Longstreth*, No. 23-1726, 2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (*per curiam*) (existence of prison grievance process precluded due process claim, even where prisoner alleged violations of the grievance policy). "Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d

---

[7] While Bey variously cites the First, Fifth and Eighth Amendments, none of these provisions apply to his personal property loss claim, which will be construed as a due process claim under the Fourteenth Amendment since Bey was a pretrial detainee at the time of the event. *See Vogt*, 8 F. 4th at 185 (stating a court should "apply the relevant legal principle even when the complaint has failed to name it").

Cir. 2019) (*per curiam*) (citing 42 Pa. Cons. Stat. Ann. § 8522(b)(3)); *see also Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *3 n.3 (3d Cir. Apr. 4, 2023) (*per curiam*) ("Even if the prison's grievance procedures were inadequate to address Lawson's claims, state tort law could serve as an adequate post-deprivation remedy.").

While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," there are exceptions to this grant of immunity. *See id*. § 8542(b). One such exception is that a political subdivision, like Philadelphia, may be held liable for an injury to property caused by negligence. *Id*. Because, under these provisions, Bey had a meaningful post-deprivation remedy available for his property loss claim in an appropriate state court, his constitutional claim is not plausible and must be dismissed.

### B. Lost Legal Property

Bey also alleges that he lost legal materials. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "However, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Id.*; *Shane v. Fauver*, 209 F. App'x 87, 89 (3d Cir. 2006) (*per curiam*) ("[T]he actual injury requirement is not met by every type of frustrated legal claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to prison conditions"); *see also Lewis*, 518 U.S. at 355 (the inability to litigate claims other than an attack on a sentence or conditions of confinements "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration").

6

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415.  "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*.  Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney.  *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).

Bey's state court records indicate that, although he filed *pro se* submissions in the case, he had standby counsel.  *Bey*, CP-51-CR-0004246-2024.  More importantly, he fails to assert in the Amended Complaint that the loss of his legal material caused an actual injury traceable to the loss. Accordingly, his claim is not plausible and will be dismissed with leave to amend if Bey can allege additional facts to state a plausible claim.

C. **Claims Based on Grievances and Failure to Investigate**

Bey alleges that Warden Patterson failed to respond to his grievance and investigate the loss, including reviewing available videos. He claims that Defendant Sam also failed to investigate the loss. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Bey predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Additionally, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another

8

individual."). For these reasons, the failure of Patterson or Sam to investigate the loss of Bey's property cannot state a separate plausible § 1983 claim.

D. **Placement at PICC**

Bey asserts a claim against Patterson for transferring him back to PICC where the incident with his cellmate occurred. His transfer to PICC does not state a plausible claim since it is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same). That claim is, accordingly, dismissed with prejudice. Bey also fails to allege a plausible "state created danger" claim arising from his return to PICC after his jaw was broken since the event had already happened before he was returned to the facility and he fails to allege any other foreseeable harm of danger. *Johnson v. City of Philadelphia*, 975 F.3d 394, 400 (3d Cir. 2020) (holding that to allege a plausible claim based on a "state created danger" theory a plaintiff must allege "first, foreseeable and fairly direct harm; second, action marked by 'a degree of culpability that shocks the conscience'; third, a relationship with the state making the plaintiff a foreseeable victim, rather than a member of the public in general; and fourth, an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state not acted at all.") (citing *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018)).

E. **Placement in the RHU**

Bey also asserts a claim against Patterson for placing him in the RHU at PICC from March 21 to April 21, 2025, after the incident with the cellmate and alleges that Johnson filed a false

misconduct report. The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

Moreover, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process." *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*). That is because due process "is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere

allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

Bey's due process claim based on his confinement to the RHU is undeveloped. He does not allege he was denied notice of the charges or an opportunity to rebut the allegedly false misconduct report filed by Johnson. For this reason, his claim cannot proceed as pled. The Court will, however, grant Bey an opportunity to file a second amended complaint if he is able to cure this defect.

### F.   Deliberate Indifference Claim

While unclear, Bey may also be attempting to allege a deliberate indifference claim against Defendant Johnson. He claims that Johnson did not respond for about one hour to other inmates calling out to get help for Bey. This claim is also undeveloped.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*,

11

834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Bey's sole allegation is that Johnson did not respond for about one hour to attempts by other inmates to get help for Bey.  This is not sufficient to allege plausibly that Johnson had knowledge that serious harm existed or that Bey required help, and that Johnson knew of the risk and intentionally refused to provide help.  The Court will permit Bey an opportunity to reassert this claim as well if he can cure these defects.

### G. Official Capacity Claims

Bey has named each Defendant in his/her official as well as individual capacity.  Claims against City officials named in their official capacity are indistinguishable from claims against the City of Philadelphia.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however,

12

to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

"It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable")). Because Bey does not allege a policy that caused him constitutional harm and none of Bey's individual capacity claims against the named Defendants are plausible as alleged, the official capacity claims are also dismissed without prejudice.

### IV. CONCLUSION

For the reasons set forth, Bey's Amended Complaint is dismissed. His claims based on loss of personal property, grievances, and his placement at PICC are dismissed with prejudice. The balance of the claims is dismissed without prejudice, with leave to file another amended complaint. An Order follows with additional information on amendment.

*NITZA I. QUIÑONES ALEJANDRO, J.*

13